UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ELLIS R.L. THOMAS, <br><br> Plaintiff, <br><br> v. <br><br> RONNIE NEAL, et al., <br><br> Defendants. | CAUSE NO. 3:23-CV-48-JD-JPK |

OPINION AND ORDER

Ellis R.L. Thomas, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) As required by 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Thomas is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Thomas is an inmate at Indiana State Prison ("ISP"). He alleges that on August 6, 2021, he was working at his job in the prison kitchen unloading a delivery truck when a pallet of frozen vegetables fell on his foot. Other workers were able to lift

the pallet off his foot, but by this time his foot was swollen and extremely painful. His supervisor sent him to the medical unit along with an "incident report" describing how his foot had been injured. Once in the medical unit, he encountered Nurse Tiffany Turner, and he gave her the incident report. She then began asking him a series of questions, but she was sitting at her desk several feet away and Mr. Thomas has poor hearing, so he could not hear what she was asking. He asked her a few times to repeat her questions and also told her that his foot was in extreme pain. He claims that without warning, Nurse Turner took two nasal spray bottles off a shelf and "shoved a bottle into [his] nose." He told her to stop and moved his head away, but she shoved the bottle in harder and sprayed some substance that caused him to "choke and suffocate." He later found out this was Narcan. He alleges that he has never used drugs, had no need for the Narcan, and did not consent to her giving it to him.

He was subsequently taken to have his foot x-rayed and was told that he did not have any broken bones. He claims Nurse Turner had him held "in the cage" for observation for approximately nine hours, during which time he was not given any pain medication or treatment for his foot. He also claims Dr. Nancy Marthakis was in the medical unit during this period but never came to examine him or provide him any treatment for his foot, instead taking Nurse Turner's word that he had overdosed on drugs. Eventually he was escorted back to his cell. He later developed sores and scabs in his nose from the Narcan Nurse Turner had administered.

After this incident, Unit Team Manager ("UTM") Bessie Leonard had him moved to the drug segregation unit. He remained there for approximately six months and was

released after he passed a series of drug tests. While in the segregation unit he lost some privileges, including that he could not have contact visits, could not work, his commissary was restricted, and he had few recreational opportunities. He also alleges that the showers in the segregation unit were dirty and the food was cold. In addition to being moved to segregation, he was also allegedly demoted to a lower credit-earning class by UTM Leonard and was fired from his prison job by Assistant Warden Dawn Buss. As best as can be discerned, these actions were taken based on Nurse Turner's report that he had been treated for a suspected drug overdose. He claims he was denied due process protections, such as the right to be heard by an impartial decision-maker, before these actions were taken. He claims that he spoke to Warden Ron Neal about the transfer and loss of his prison job and the Warden allegedly told him he "would review [the] case," but he never heard anything further.

Based on these events, he sues Warden Neal, Assistant Warden Buss, UTM Leonard, Nurse Tiffany, and Dr. Marthakis. He seeks monetary damages for improper medical treatment, the loss of his job, and the hardships he suffered while in the drug segregation unit.

Under the Eighth Amendment, inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). However, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive

3

unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). Ignoring an inmate's complaints of pain or delaying in providing necessary treatment can amount to deliberate indifference, particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted).

Giving Mr. Thomas the inferences to which he is entitled at this stage, he has alleged a plausible Eighth Amendment claim against Nurse Turner and Dr. Marthakis. As to Nurse Turner, he claims that she had the incident report and was made aware that he had injured his foot, but she provided him no care for his foot even though his foot was swollen and he was in extreme pain. Although Dr. Marthakis had less involvement in these events, the complaint can be read to allege that she was deliberately indifferent to his need for care by failing to assess him and simply deferring to Nurse Turner about what had happened. As a result of their inaction, he left the medical unit in pain and without crutches, bandages, or any other form of treatment for his foot. He will be permitted to proceed on a claim for damages under the Eighth Amendment against these two defendants.

Inmates also possess a Fourteenth Amendment due process liberty interest in "refusing forced medical treatment while incarcerated." *Knight v. Grossman*, 942 F.3d

4

336, 342 (7th Cir. 2019). This right also encompasses the right to informed consent, which means the inmate is entitled to "such information as a reasonable patient would deem necessary to make an informed decision." *Id.* The prisoner must allege that the defendant "acted with deliberate indifference to his right to refuse medical treatment." *Id.* "Neither negligence nor gross negligence is enough to support a substantive due process claim, which must be so egregious as to 'shock the conscience.'" *Id.* (citation omitted).

Here, Mr. Thomas alleges that he did not take any drugs on the date in question, and was instead in the medical unit after injuring his foot in the prison kitchen. He claims Nurse Turner had the incident report outlining why he was there and that he also told her he had a painful foot injury. He claims that he was fully competent but could not hear the questions Nurse Turner was asking because his hearing his poor and she was sitting 10 feet away from him. He claims Nurse Turner never told him she was about to administer Narcan, that he told Nurse Turner to "stop" and moved his head away when she inserted the bottle in his nose, but she allegedly continued to administer the medication, causing him to choke and later to develop sores inside his nose. He will be permitted to proceed against Nurse Turner on a claim for damages under the Fourteenth Amendment.

His claims against the other defendants relate to his temporary transfer to the drug segregation unit and the loss of his prison job. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. However, due process is

5

only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship. . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). There is no general constitutional right to remain in the prison's general population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin*, 515 U.S. at 484. Termination from a prison job, the loss of privileges, or a transfer to a less desirable location within the prison do not trigger due process protections. *Cochran v. Buss*, 381 F.3d 637, 641 (7th Cir. 2004) (claims that inmate "lost his preferred prison living arrangement, his prison job and his eligibility for rehabilitative programs" did not trigger due process concerns); *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("prisoners possess neither liberty nor property in their classifications and prison assignments"). Thus, his allegations related to his termination from his prison job and temporary assignment to the drug segregation unit do not state a plausible Fourteenth Amendment claim.

It can also be discerned from his allegations that he received a credit-class demotion as a result of these events. Because this sanction had the effect of lengthening his sentence, he was entitled to due process protections before it was imposed. *Wolff v. McDonnell*, 418 U.S. 539 (1974). However, a sanction that lengthens the duration of an inmate's custody must be challenged in a habeas petition under 28 U.S.C. § 2254, not in a civil rights action brought under 42 U.S.C. § 1983. *See Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir. 2001). Mr. Thomas' allegations pertaining to the lack of due process protections provided when he received a credit-class demotion will be

6

dismissed without prejudice to their being raised in a habeas petition filed under 28 U.S.C. § 2254.[1]

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Dr. Nancy Marthakis and Nurse Tiffany Turner in their individual capacities for money damages for denying him adequate medical care as required by the Eighth Amendment after he injured his foot on or about August 6, 2021;

(2) GRANTS the plaintiff leave to proceed against Nurse Tiffany Turner in her individual capacity for monetary damages under the Fourteenth Amendment for administering Narcan against his wishes and for no legitimate medical reason on or about August 6, 2021;

(3) DISMISSES without prejudice the plaintiff's claim that his due process rights were violated when he received a credit-class demotion;

(4) DISMISSES all other claims;

(5) DISMISSES Ronnie Neal, Dawn Buss, and Bessie Leonard as defendants;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Nancy Marthakis and Nurse Tiffany Turner at Centurion Health and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

---

[1] Should Mr. Thomas wish to pursue this avenue, he can obtain the necessary form for challenging a prison disciplinary sanction from the ISP law library.

(7) ORDERS Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(8) ORDERS Dr. Nancy Marthakis and Nurse Tiffany Turner to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 15, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT